JULIANA SCHWABEL, Respondent, v. FIRST NATIONAL· BANK OF MONTPELIER, North Dakota, a Corporation, Appellant.

(208 N. W. 236.)

**Appeal and error — instructions — scope of instructions must be determined by pleadings and evidence.**

The scope of the instructions must be determined by the pleadings and by the evidence; and if a charge be given on issues not raised by the evidence, or contrary thereto, the error requires a reversal of the judgment, when such un-

Note.—Instruction on issue not raised by pleading reversible error, see 2 R. C. L. 260; 1 R. C. L. Supp. 483; 4 R. C. L. Supp. 99.

warranted instruction is calculated to mislead the jury to the prejudice of the complaining party.

Opinion filed March 17, 1926.

Appeal and Error, 4 C. J. § 3016 p. 1036 n. 67.   Trial, 38 Cyc. p. 1612 n. 13; p. 1617 n. 34; p. 1618 n. 36; p. 1619 n. 37.

Appeal from the District Court of Stutsman County, *Jansonius*, J. Reversed.
*Carr & Rittgers,* for appellant.
*John A. Jorgenson,* for respondent.

JOHNSON, J.   This is an action to recover possession of two Wisconsin soldier's bonus bonds, numbered 42 and 43, each of the face value of $1,000, or if possession cannot be had, then the value of the bonds.   There was a verdict for the plaintiff awarding her the value of the bonds, on which judgment was entered.   A motion for judgment notwithstanding the verdict, or, in the alternative, for a new trial, was denied.   This appeal is taken from the judgment and from the order of the trial court denying defendant's motion.

Late in 1919, or early in 1920, the plaintiff and her son took up their residence in the vicinity of Montpelier, this state.   They farmed 320 acres of land, about one mile from the village, the land having been purchased by the son upon a contract for a deed.   In April, 1920, the bonds in controversy were deposited for safekeeping with the defendant bank.   In April, 1921, the son executed his note to the defendant in the sum of $2,000; and on September 17, 1921, another note was executed by the son in the sum of $900.   The name of the plaintiff appears on the second note as maker.   This note was payable March 17, 1922; on the same date another note, in the sum of $1,000, also payable March 17, 1922, was executed by the son alone.   On November 3, 1921, a note for $353, payable September 1, 1922, was executed jointly by mother and son and delivered to the defendant.   At the same time and as a part of the same instrument, an agreement of pledge was executed by mother and son, whereby one of the bonds in suit was pledged as security for the loan.   The mother admits the execution of this note and the pledging of the bond.   She positively denies having

signed any instrument evidencing other indebtedness than this $353. Her name appears on four other instruments including pledges of both the bonds in suit, executed on or subsequent to September 17, 1921, but she denies the signature in each and every instance. On a note dated March 1, 1922, in the sum of $513.69, her name appears with that of her son; as a part of that instrument is a pledge of bond No. 42, bond No. 43, having been pledged as security for the note executed on November 3, 1921, for $353, as above stated. On March 17, 1922, her name appears on another note in the sum of $943; again on October 27, 1922, she alone appears to have executed a note, secured by a pledge of the bonds in suit, in the sum of $606; and on October 27, 1922, she seemingly joins with her son in the execution of a note and pledge of the bonds, the note being for $2,500, payable September 1, 1923. As stated, she denies her signature in each and every instance, except that on the note of $353. The plaintiff and her son and his family left the vicinity of Montpelier on or about September 4, 1923, and are now residing in the state of Mississippi. It appears that about the time they left the state, the plaintiff and, possibly, her son, appeared at the bank and transacted some business.

Sometime in the early part of 1924, the defendant bank forwarded the bonds for collection to the proper office in Wisconsin. They were paid and the sum of $2,050 was credited upon the indebtedness of the plaintiff's son at the bank, the bonds having been converted into cash pursuant to authority given in the agreement of pledge. After application of the proceeds of the bonds, as aforesaid, to the payment of the indebtedness to the bank on which appeared the names of plaintiff and her son, there remained due and unpaid over $100.

It is the contention of the defendant that the bonds were left as a pledge to secure the written obligations of the plaintiff and her son; that these obligations were not discharged when they fell due; and that, pursuant to authority contained in the pledge agreement, the proceeds were applied in reduction of the existing indebtedness. The plaintiff, on the other hand, contends that the bonds were left with the bank for safe-keeping; that if they were pledged for the note of $353, that note was paid and the pledge released.

Plaintiff's son did not appear. Plaintiff testified in her own behalf. She called two former officers or employees of the defendant for cross-

examination under the statute. Her testimony is confused and in places somewhat contradictory. She consistently maintained upon the witness stand, however, that the signatures to the various instruments to which reference has already been made, were not hers; and, by necessary inference, that they were forgeries. She pleaded imperfect command of English and insisted upon an interpreter at the trial. The testimony of the defendant's witnesses shows that she was able to transact her own business; that she understood English fairly, although not perfectly; and that an employee of the bank who spoke German always explained such details of the business deals in which she was concerned, as might not be fully understood by her. This employee so testified. The testimony of these witnesses is to the effect that her son was present when most, if not all, of these transactions took place and explained to her in German, all obscure points; that a bank employee who spoke German was present, listened to the explanations and supplemented them by such details as might have been omitted by the son; and that these witnesses saw her sign the instruments. The plaintiff does not claim at any point in her testimony that she was induced to sign any of the instruments by fraud or misrepresentation; or that her signature was procured by taking advantage of her alleged imperfect understanding of business or her limited command of the English language. Her claim, consistently and emphatically stated many times, is that the signatures purporting to be hers, *are not hers in fact.* While she never uses the word "forgery," the necessary and irresistible inference is that in her view all the signatures, with the single exception noted, are forgeries. Such is the issue made by the testimony.

Several errors are assigned, only one of which it is necessary to consider. We see no escape from the conclusion that there was such a misdirection of the jury as to necessitate a reversal and a new trial. The trial court instructed the jury upon the theory, stated in general terms, that the signatures were those of Mrs. Schwabel, but might have been procured by fraud, misrepresentation or overreaching of some sort. A fair example of such instruction is the following, to which exception is taken: "If she was induced to sign the instrument by the defendant, and she relied upon the defendant's representations and the true facts were misrepresented to her by them, she would be ex-

cused in this case." Again the court said: "Of course, if the other party induced the party to sign the papers without reading it, and to rely upon his statement of the contents, this might give the signer a right, if the statement was false, to avoid the contract as against her." Again, the court said to the jury, in substance, that one who procures an illiterate and infirm person to sign a contract, must not only show that the contract was read to that person, but that he understood and assented to it knowingly. The court further said: "If you find she signed the note and pledge, but also find that she did not know what she signed, by reason of the fact that she did not understand and could not read the English language, then the question is, did she depend upon the defendant's agent to interpret it for her, and did they interpret it correctly? That is a question which you must determine from the evidence in this case."

Two witnesses, testifying for the defendant, stated explicitly that she understood every detail of these transactions thoroughly at the time and that the transactions were fully explained. She controverts nothing save the genuineness of the signatures. By the instructions quoted, the court brought into the case an issue not presented by the evidence. It submitted to the jury by inference, a question of fact on which no issue was attempted to be made by the plaintiff. There is not only no evidence in the record warranting the instructions given, but it is at complete variance with the theory upon which the plaintiff unfolded her case before the jury. When she was confronted with the pledges and the notes secured thereby, showing her signatures on both, she did not claim that she had been induced by fraud to sign, but denied that she had ever signed.

Plaintiff, at the time of the trial, was eighty-two years of age; affidavits used by the defendant in support of a motion for a new trial on account of misconduct show that she wept constantly and otherwise exhibited emotion in the presence of the jury, during the entire trial, calculated to appeal to the sympathies of men. We see no escape from the conclusion in this case that while the instructions correctly stated the law, as an abstract proposition, they were wholly inapplicable to the testimony and the theory on which the case was tried, and prejudicial to the defendant.

In McLain v. Nurnberg, 16 N. D. 144, 112 N. W. 243, this court

held that a requested instruction not applicable to the evidence should be refused. That the scope of instructions in a given case must be determined not only by the pleadings but also by the evidence, is a rule universally recognized; 38 Cyc. 1617; 14 R. C. L. 786; and if a charge be given on issues not raised by the evidence, or contrary thereto, the error requires a reversal of the judgment, when such unwarranted instruction is calculated to mislead the jury to the prejudice of the complaining party. Foster v. Dwire, 51 N. D. 581, 199 N. W. 1017; 38 Cyc. 1619; 14 R. C. L. 790, 791; Sweeney v. Erving, 228 U. S. 233, 57 L. ed. 815, 33 Sup. Ct. Rep. 416, Ann. Cas. 1914D, 905. Such an instruction for all it is correct as an abstract statement of the law is condemned because it suggests that the jury may speculate as to the existence of facts which have no substantial support in the testimony.

The judgment is reversed and a new trial is ordered.

CHRISTIANSON, Ch. J., and BURKE, BIRDZELL, and NUESSLE, JJ., concur.