Arthur ANDERSON and Arnold Anderson by
his guardian ad litem, Arthur Ander-
son, Plaintiffs and Respondents,

v.

Donald MEIDE and Harley Anderson,
Defendants and Appellants.

No. 8114.

Supreme Court of North Dakota.

May 22, 1964.

Rehearing Denied July 9, 1964.

Wattam, Vogel, Vogel, Bright & Peterson, Fargo, for appellants.

Lewis & Bullis, Wahpeton, for respondents.

TEIGEN, Judge.

The defendants appealed from an adverse judgment in an action brought by the plaintiffs for personal injuries sustained by the plaintiff Arnold Anderson, a minor, and for the necessary medical expenses expended by the minor's father, Arthur Anderson.

The plaintiff Arnold Anderson, son of the plaintiff Arthur Anderson, a farm boy about nine and one-half years of age and in the fourth grade in school, was injured on October 28, 1961, as the result of a farm accident. He was helping unload a Helex Automatic or Conveyomatic wagon loaded with ear corn. A farm tractor supplied the power to the wagon through a power take-off to operate an endless, belt-like, wire-mesh floor of the wagon. The floor of the wagon slowly moved the corn to the back of the wagon, permitting the ears of corn to drop off the back end of the wagon into the hopper of a portable elevator, which elevated the corn into a corn crib. The endless wire-mesh floor of the wagon revolved around rollers at each end of the wagon. This floor extended forward in front of the wagon box several inches and was exposed.

The plaintiff Arnold Anderson was injured when he placed his hand upon the exposed portion of the moving wire-mesh floor extending in front of the wagon. His fingers became caught in the mesh. The floor carried his hand, as it revolved, until it reached the front end of the wagon box which blocked its progress. It caused severe injury to his fingers, one of which had to be amputated. He had placed his hand on this floor to hoist himself in an effort to enter the wagon box from the front.

The accident occurred on Arthur Anderson's farm. The automatic wagon belonged to the defendant Harley Anderson. The tractor which furnished the power belonged to the plaintiff Arthur Anderson. The unloading operations were being carried out by the defendant Donald Meide, a regular farm employee of the defendant Harley Anderson. The load of corn being unloaded was picked on the defendant Harley Anderson's farm and was brought to Arthur Anderson's farm as repayment for a load of corn previously borrowed by Harley from Arthur.

The defendant Harley Anderson and the plaintiff Arthur Anderson are brothers operating adjoining farms near Hankinson, North Dakota. The defendant Donald Meide was a regular employee of Harley Anderson, although he also worked as a special employee for Arthur Anderson. He was paid by Harley Anderson on a monthly basis and was furnished living quarters for himself and his family as a part of his salary. Through the years the two brothers exchanged labor and services for various farm operations. The plaintiff Arthur Anderson owned a corn picker and the defendant Harley Anderson owned a grain combine. This equipment was used on both farms and each paid the other for the use of his equipment at an agreed rate per acre. The brothers also exchanged farm laborers for which each reimbursed the other at day rates which had been agreed upon. Settlement was made at the end of each year.

The accident occurred during the corn picking season. The corn being unloaded was the last load picked on the Harley Anderson farm earlier that day. Corn picking was in progress on Arthur Anderson's farm at the time of the accident. The defendant Donald Meide hauled corn on both farms. Each of the brothers owned similar wagons and both were used on each farm. It was customary to use the tractor belonging to the farm on which the work was being performed to haul the corn and to operate the wagon. At the time of the accident Arthur's wagon was attached to the corn picker being operated in Arthur's field. The defendant Donald Meide worked as a corn hauler on both farms. Using a tractor belonging to the farm in which the work was in progress, Meide would take an empty wagon to the field, exchange it for a loaded wagon and return the load to the farmstead where he elevated its contents into a corn crib. Harley Anderson was reimbursed for Meide's services when he worked on Arthur's farm. Meide was in the process of unloading the repayment corn so as to have an empty wagon to take to the field on Arthur's farm where corn picking was then in progress. The plaintiff Arnold Anderson was not a hired employee but he was friendly with the defendant Meide and on occasions in the past, while Meide was working on his father's farm, he assisted in minor respects. He was a willing boy and enjoyed assisting Meide in the operation of farm machinery.

When Meide arrived on the Arthur Anderson farmstead with the load of corn from the Harley Anderson farm, brought as repayment of a loan for corn borrowed, he was invited into the Arthur Anderson home where he had lunch. After lunch he disconnected Harley Anderson's tractor from the wagon and connected Arthur Anderson's tractor thereto. He then proceeded to unload the corn into a corn crib in the manner described above. Most of the corn had been unloaded and elevated into the crib when the crib separated and corn started

falling from it to the ground. Meide laid down the fork rake which he had been using to guide the corn into the elevator hopper from the back end of the wagon and started toward the crib for the purpose of repairing it. It was at this point that the plaintiff Arnold Anderson began to assist in the work. Arnold had just returned from Roseau and found Meide in the process of unloading the corn. Although it is disputed in the arguments, the evidence is clear that Arnold on this occasion asked permission to help by raking down the balance of the corn while Meide repaired the crib. The evidence also establishes that on some other occasions, Meide had asked Arnold to assist him in minor respects such as coupling and uncoupling the tractor. While Meide was repairing the corn crib and was out of sight of the wagon, Arnold raked down the balance of the corn. He discovered two or three ears of corn stuck in the bottom of the wagon near the front thereof which he could not reach with the rake from the back of the wagon. He decided they should be dislodged. It was for this reason that he went around the front of the wagon to enter it for the purpose of dislodging these ears of corn and was injured. The evidence discloses the normal practice was to leave the stuck ears of corn in the wagon as they would be automatically removed with the next load.

The wagon is dangerous only at the front end where this revolving screen floor protrudes from the front of the wagon box. Meide had not cautioned Arnold of this danger on the date the accident occurred. He had, however, on previous occasions cautioned him about this danger. Arnold testified he knew it was dangerous and that he had been warned but that on other occasions he had entered the wagon successfully in the same manner. He testified, however, that Meide had never seen him do it and this was corroborated by Meide. There is no evidence establishing that Harley Anderson had any knowledge of the relationship between the employee Meide and the plaintiff Arnold Anderson. Arthur Anderson, the father of Arnold Anderson, testified that he was aware of the relationship as he had seen his son assist Meide on various occasions and that his son liked to work around farm machinery, although he did not encourage it and that he was not paid for his services.

The action was brought and prosecuted on the theory that the defendant Donald Meide, acting as the agent of and for the defendant Harley Anderson, solicited the aid of the plaintiff Arnold Anderson and carelessly and negligently caused the minor child, Arnold Anderson, to work in and about the moving screen floor knowing it was dangerous and that, as a result of negligence and want of ordinary care on the part of the defendant Meide, acting as the agent of the defendant Harley Anderson, the plaintiff Arnold Anderson was injured.

The defendants by their answer generally deny the allegations of the plaintiffs' complaint, except they admit the injury occurred and admit the relationship between the plaintiffs as father and son. They also affirmatively plead contributory negligence.

The theory on which the case was tried was that of respondeat superior, a relationship of employer and employee. The statutory defense of the fellow-servant rule, Section 34–02–02, N.D.C.C., was not invoked on behalf of the defendant Harley Anderson. It appears the case was tried upon the theory that an employer is bound to indemnify his employee for losses suffered by the latter in consequence of the negligence of another person employed by the same employer in the same general business and the court instructed the jury along that theory. Such theory must prevail in this court for the purposes of reviewing this case. Casey v. First National Bank of Nome, 20 N.D. 211, 126 N.W. 1011; Kuntz v. McQuade, N.D., 95 N.W.2d 430.

The verdict was returned by the jury against both defendants. It awarded damages in the sum of $7,500 for the plaintiff Arnold Anderson and the sum of $476.73 for the plaintiff Arthur Anderson for mon–

·eys expended as a result of the injuries to his son. From judgments entered upon such verdicts, the defendants have appealed.

■ At the close of the plaintiffs' case and again at the close of the whole case, the defendants moved for a directed verdict. These motions were denied in accordance with Rule 15(a), N.D.R.Civ.P. No motion for a new trial was made, nor was there a motion for judgment notwithstanding the verdict. The case is here on appeal from the judgment and this court may review the ruling on the motions for directed verdict. Section 28-27-29.1, N.D.C.C.

The defendants, on this appeal, specified many assignments of error, including error on account of ruling of the court with reference to admission of evidence, question of the sufficiency of the evidence to sustain the verdicts, and many specifications of errors of law, including several alleged errors in the instructions.

■ The first assignment which we deem it necessary to consider is that which involves the sufficiency of the evidence to sustain the verdicts. The defendants moved for a directed verdict, specifying the same grounds now urged here, wherein they contend that the plaintiffs' evidence is insufficient. In Rokusek v. National Union Fire Insurance Co., 50 N.D. 123, 195 N.W. 300, it was held that under such procedure a question of law involving the sufficiency of the evidence has been raised which we must consider and dispose of on appeal from the judgment. See also National Cash Register Co. v. Midway City Creamery Co., 57 N.D. 356, 222 N.W. 36.

The motion for directed verdict specified the particulars upon which each claim was based. The defendants urged the evidence was insufficient:

1. To establish an agency relationship between the defendant Donald Meide and the defendant Harley Anderson.

2. To show that a master-servant relationship existed between the defendants. They maintained that the evidence, in fact, established the defendant Donald Meide was the special servant of the plaintiff Arthur Anderson.

3. To establish that Donald Meide was negligent.

4. To establish that the plaintiff Arnold Anderson was an employee, gratuitous or otherwise, of the defendants or either of them.

The defendants also moved for a directed verdict on the ground that the only negligence shown by the evidence is the negligence of the plaintiff which was the proximate cause of the injury. An examination of the instructions to the jury discloses that the jury was instructed to decide issues 1, 2, and 3 of the specifications of insufficiency of the evidence and also the issue of contributory negligence, but was not instructed to pass on the fourth specification of the motion for a directed verdict.

The plaintiffs in their complaint allege that the defendant Donald Meide, as the agent of Harley Anderson, "solicited the aid of the plaintiff Arnold Anderson." The defendants in their joint answer deny this allegation. It was a major issue in the trial of this action. The court in its instructions summarized the pleadings. It advised the jury that the plaintiffs by their complaint alleged in substance "the plaintiff, Arnold Anderson, at the request of the defendant, Donald Meide, who was then an employee of the defendant, Harley Anderson, was helping the said Donald Meide in the operation of hauling corn." The court also informed the jury that the defendants had filed an answer denying all of the allegations of the complaint, except they admitted the plaintiff Arnold Anderson sustained an injury to his hand and alleged the affirmative defense of contributory negligence. It then followed the usual practice of informing the jury that the pleadings are not evidence and are not to be considered by the jury as evidence, but that the pleadings merely define the issues between the parties.

Nowhere in its instructions does the court again refer to the very important issue of whether Arnold Anderson was solicited or if he volunteered, as is claimed by the defendants. The court in a later part of its instructions also summarizes the contentions of the parties as they developed in the trial. This summary contains no statement on the issue of solicitation. Following this summary of the contentions, the court then instructed the jury as follows:

"In respect to the cause of action of Arnold Anderson, the issues to be determined by you are these:

"First, was the defendant, Donald Meide, negligent? . If, after a consideration of all the evidence, and by a fair preponderance thereof, your answer to that question is 'no', you will return a verdict for the defendants. If your answer is 'yes', you will have a second issue to determine, namely: was that negligence a proximate cause of any injury to the plaintiff, Arnold Anderson? If, after a consideration of all the evidence, and by a fair preponderance thereof your answer to that question is 'no', plaintiff is not entitled to recover; but if your answer is 'yes', you then must find on a third question: was the plaintiff, Arnold Anderson, guilty of contributory negligence? If, after a consideration of all the evidence, and by a fair preponderance thereof, your answer to that question is 'yes', your verdict must be for the defendant; but if your answer is 'no', and you previously have found that negligence on the defendant's part was a proximate cause of plaintiff's injury, you then must fix the amount of plaintiff's damages and return a verdict in his favor."

Thus the jury was specifically instructed that there were only three issues to be determined.

1. Was the defendant Donald Meide negligent?

2. Was that negligence the proximate cause of the injury?

3. Was the plaintiff Arnold Anderson guilty of contributory negligence?

The jury was instructed that if it found the first two issues in the affirmative and the third issue in the negative, it must then proceed to fix the amount of the plaintiff Arnold Anderson's damages and return a verdict in his favor. In respect to the claim of the plaintiff Arthur Anderson, a similar instruction was given. It is clear the jury never passed on the question of whether or not Donald Meide solicited the aid of the plaintiff Arnold Anderson in the unloading operations.

The instructions were furnished to counsel in advance and exceptions taken. The defendants excepted to the instructions in various areas and particularly the summarization of the contentions of the parties wherein the court stated that the plaintiffs contend that the defendant Donald Meide requested the plaintiff Arnold Anderson to assist him in unloading the corn into the corn crib, contending that the proof adduced by the plaintiffs shows that the plaintiff Arnold Anderson himself requested that he be permitted to assist.

The jury was not given an opportunity to pass upon the first crucial issue of the lawsuit. The instructions amount to a direction on the part of the court that the defendant Donald Meide requested the plaintiff Arnold Anderson to assist in the operation in which he was injured.

The plaintiffs in their brief to this court state that the ultimate facts disclose that "At the time of the injury, Arnold Anderson was the gratuitous employee of Harley Anderson acting within the scope of his employment." "Defendant Donald Meide was acting within the scope of his authority at the time he solicited the aid of Arnold Anderson." Plaintiffs further state that "The act which resulted in the accident was due to the negligence of the defendant, Donald Meide, acting as the agent and

employee of the defendant, Harley Anderson." "The plaintiff, Arnold Anderson, was not a volunteer and the duty owed to him was one of due care." On this theory the fellow-servant rule would be applicable.

The plaintiffs' contention that the defendant Donald Meide solicited the aid of Arnold Anderson, and as a result he became a gratuitous employee and not a volunteer, is not sustained by the evidence. Donald Meide, on cross-examination as an adverse party, testified as follows:

"Q. Can you describe how it happened?

"A. I don't know for sure how it happened, but I was just about unloaded, there was about ten to twelve bushels left in the wagon, and the corn bin was getting full and started to run out, so I laid the rake down to walk over and close it up, and Arny asked if he could rake the rest of the corn out, and I said yes, and in the meantime I walked over to the crib—

"Q. Arny asked you what?

"A. If he could finish raking that corn out.

"Q. Out of the trailer?

"A. Yes, and I walked over to the crib, and about a minute or minute and a half had expired when I heard Arny holler."

On cross-examination by his own attorney, he testified as follows:

"Q. And in fact when the accident occurred on October the 28th, didn't Arnold ask you if he could come out and help you?

"A. Yes sir.

"Q. You did not request that he come out of the house to help you, did you?

"A. No sir.

"Q. The boy himself asked you if he could?

"A. Yes sir.

"Q. And what did you tell him?

"A. I told him he could."

The plaintiff Arnold Anderson testified as follows:

"Q. Were you home all day on October the 28th?

"A. No.

"Q. Where had you been?

"A. I was in Rosseau.

"Q. With your mother perhaps?

"A. No, with my brother.

"Q. What time did you get back from Rosseau?

"A. About quarter to four.

"Q. Was that about the time that Donald Meide came into your farm with this load of corn?

"A. No, he came in before. He was pretty near done with the load when I came.

"Q. He was pretty near done with the load?

"A. Yes, unloading.

    *    *    *    *    *    *

"Q. Did you then walk over there where these two men were?

"A. Yes.

"Q. Did you ask Donald to let you help?

"A. Yes.

"Q. He didn't ask you to help?

"A. No."

The plaintiff Arnold Anderson clearly was a volunteer. A "volunteer" is one who does, or who on his own initiative

282

undertakes to do, something which he is not legally or morally obligated to do and which is not in pursuance or protection of his own personal interests. A volunteer comes under the rule that one who volunteers to act for another cannot recover for personal injuries as a servant of such other. Severinson v. Nerby, N.D., 105 N.W.2d 252; 35 Am.Jur., Master and Servant, Sec. 166, p. 595; 56 C.J.S. Master and Servant § 177, p. 864.

The rule that a volunteer cannot recover for personal injuries as a servant applies equally to minors. 56 C.J.S. Master and Servant § 177, p. 865.

The evidence is clear, convincing and uncontradicted. It clearly establishes the volunteer status of the plaintiff Arnold Anderson as a matter of law.

If the plaintiff Arnold Anderson was a mere volunteer, and undertook to assist without invitation and without contractual obligation to do so, the defendants would not be liable for any injuries suffered by him, unless they were guilty of gross negligence, willfulness or wantonness. Severinson v. Nerby, supra; 35 Am. Jur., Master and Servant, Sec. 166, p. 595–596; 56 C.J.S. Master and Servant § 184, pp. 881–882.

The evidence clearly establishes that the plaintiff Arnold Anderson had asked permission to work only at the rear end of the wagon which was not dangerous. He had assisted in the unloading operations on other occasions on his father's farm and was acquainted with the operation of the wagon and the dangers of the front end thereof. He had been warned of these dangers by his father and by Donald Meide. There was no reason for working at the front end of the wagon. The load came off at the rear where the wagon was safe and there was no need to remove corn that may have stuck in the wagon, particularly when corn picking was in process, as these ears would be removed with the next load of corn. The evidence clearly establishes these facts.

Arnold Anderson testified as follows:

"Q. Did your Dad know you were helping out?

"A. Yes.

"Q. Did he tell you not to help out?

"A. No

"Q. Did your Dad tell you to be careful of the tractor and of the wagon?

"A. Yes.

"Q. Did Donald also tell you to be careful?

"A. Not that day, but some days after.

"Q. Some days—

"A. I mean before.

"Q. He had told you to be careful of the wagon?

"A. Yes.

"Q. Did he point out this mesh, this revolving mesh, to you?

"A. Yes.

"Q. And told you to be very careful of that?

"A. Yes.

* * * * * *

"Q. What did you do in getting into the wagon from the front end?

"A. I put my hand on the mesh, and then I put my leg on the pole, and put my right hand on the top of the—the level of the top of the wagon.

"Q. And then you elevated yourself up and into the wagon, is that right?

"A. Yes.

"Q. Did you get into the wagon completely?

"A. Yes.

"Q. And jump down on the floor?

"A. Yes.

"Q. All the time when this mesh was revolving?

"A. Yes.

"Q. How many times had you done that before?

"A. Oh, four or five.

"Q. Hadn't Donald told you not to do that?

"A. No.

"Q. But he had pointed out to you that it was dangerous, that you might get your fingers caught in the mesh, isn't that right?

"A. Yes.

"Q. When this mesh operated, Arnold, could you actually see it move?

"A. Yes.

*   *   *   *   *   *

"Q. Now about how many times did you say that you would jump into the wagon?

"A. About four or five times.

*   *   *   *   *   *

"Q. Was Donald present?

"A. No.

"Q. Donald was not present when you climbed in and out of the wagon?

"A. I don't think he saw me.

"Q. You did this when he was not there, is that right?

"A. Well, he was in the crib sometimes.

"Q. When you were playing around, he might not be right by the tractor, or by the wagon?

"A. No, he was picking up the ears of corn that fell."

The evidence will not sustain a finding of gross negligence, willfulness or wantonness.

The plaintiff Arthur Anderson's claim must also fall for the same reason.

In view of our decision, it is not necessary to review the other specifications of error.

█ If we assume the plaintiff Arnold Anderson was not a volunteer but was an employee as claimed by the plaintiffs, he became a fellow-servant with Donald Meide. There is no evidence that Harley Anderson neglected to use ordinary care in the selection and hiring of Donald Meide. In fact, the parties agree he was a very competent and trustworthy employee. There is no claim and the evidence does not establish that Meide could be classified as a vice principal, nor does it appear Arnold Anderson assisted to further his own interest or business. Therefore, responsibility would have to be denied in any event under Section 34–02–02, N.D.C.C.

It is clear that there is no question of fact to submit to a jury. The plaintiffs cannot prevail. The motion for a directed verdict was good. That being the case, the judgment must be reversed and a judgment notwithstanding the verdict ordered for the defendants.

MORRIS, C. J., and BURKE, ERICKSTAD and STRUTZ, JJ., concur.