Leo SCHAN, Individually and as Trustee for the North Dakota Workmen's Compensation Bureau, Plaintiff and Appellee,

v.

HOWARD SOBER, INC., Defendant and Appellant.

Civ. No. 8954.

Supreme Court of North Dakota.

March 28, 1974.

Palda, Anderson Tossett, Palda, Thomas & Berning, Minot, for defendant and appellant.

Farhart, Rasmuson, Olson & Lian, Minot, for plaintiff and appellee.

PAULSON, Judge.

This is an appeal by the defendant-appellant, Howard Sober, Inc. [hereinafter Sober, Inc.], from an order of the Fifth Judicial District Court, Ward County, denying Sober, Inc.'s motion for judgment notwithstanding the verdict, or in the alternative, for a new trial. There is no appeal taken from the judgment itself.

The material facts are as follows:

Sober, Inc. is a corporation engaged in the business of transporting motor vehicles. In March of 1965, James Lewis was employed by Sober, Inc. as a driver of a vehicle transport. At that time he had had approximately eleven years' experience in driving such transports.

Shortly before March 9, 1965, Mr. Lewis left Des Moines, Iowa, to transport a load of cars to Nebraska, and then proceeded to Ellsworth Air Force Base in Rapid City, South Dakota. He was to pick up a load of F–100 Ford pickup trucks from the Boeing Aircraft Corporation at Ellsworth and transport them to Boeing's motor pool at the Grand Forks Air Force Base near Grand Forks, North Dakota. When Mr. Lewis arrived in Rapid City, to load such trucks for transport, he learned that they were four-wheel drive units. This necessitated certain modifications in his normal loading procedure, which he explained as follows:

"Q All right, you had hauled F100 Ford pickup trucks on your particu-

lar unit on other occasions prior to March 9, 1965?

"A Yes.

"Q All right, did it make a difference in those particular vehicles if they were four-wheel drive or two-wheel drive?

"A Yes, very definitely.

"Q What difference did it make?

"A Four-wheel drive vehicle is much higher than a regular two-wheel drive vehicle. The tire—size of the tires makes a difference.

"Q Now, would you just amplify or explain to me what you mean, what effect that has then?

"A Well, it makes you higher. The vehicle itself is higher. In order to get a regular half-ton F–100 Ford pick-up on, you just drive it on and put the chains on it and tighten it down some and go. With F–100 Ford pick-ups with bigger tires, four-wheel drive, you have to let some air out of the tires to get them on. To get them on where they are low enough where you can clear underpasses, bridges along the highway, railroad overpasses, tree limbs, traffic signals, all overhead objects.

"Q Now, I would like to limit my questions specifically to what, if any, adjustments are required to be made when they're placed in the lower racks?

"A You have to pull them down very tight and you have to let some of the air out of the tires. See, we have a rear deck lid that raises up on the back end of the trailer. In order to get these vehicles in—there's no difficulty getting them in; but when you let the rear deck lid down, the way it's made, in order to get the top vehicles on, you have to lower this rear deck lid

down, and, you, therefore, have to have this vehicle low enough to where you can lower this deck lid down. Do you know what I mean?

"Q Were the units that you picked up in Rapid City, South Dakota, F100 Ford pickup trucks with four-wheel drive?

"A Yes.

. . . . . .

"Q (Mr. Thorn, continuing) When hauling an F100 Ford pickup of that particular year with four-wheel drive, it is neccessary that you let some of the air out of the tires to reduce its overall height while it's being transported?

"A In the bottom, yes.

"Q All right, in the bottom. I'm sorry I did not limit it to the bottom rack. And further, it is also necessary, that when one of these units with four-wheel drive is being transported, that you tighten down the chains with the ratchet or winch tighter than you normally would tighten them down?

"A Yes."

Mr. Lewis loaded five of these F–100 pickups on the transport and hauled them to Grand Forks. When he arrived at the Boeing Motor Pool at the Grand Forks Air Force Base, Mr. Lewis reported to the dispatcher of the motor pool and requested that someone with an air compressor assist him in inflating the tires of the pickups so that they could be driven off the transport without damaging the tires. The plaintiff, Leo Schan, an automotive mechanic with Boeing, was directed by his immediate supervisor to assist Mr. Lewis.

Mr. Lewis testified as follows with respect to Mr. Schan's assistance in unloading the pickups from the transport carrier:

"Q And in what nature did he assist you as you proceeded?

"A  Well, he inflated the tires where I wouldn't hurt those when I drove off. You don't drive a vehicle with a flat tire without ruining the tire; and I didn't want no claim on that. And unchaining, I would say, number four vehicle; it was on the bottom rear end of the tractor.

"Q  Let me back up just a minute. Which vehicles did you take off first?

"A  Three top ones.

"Q  Okay, and in taking those vehicles off, were they chained to the carrier?

"A  Yes.

"Q  And what type of mechanism was it that was used to release the chains on those vehicles?

"A  What we call a winch bar; it's a long bar about thirty-inches long, round, and approximately three-quarters of an inch in diameter.

"Q  Okay, this winch bar, is that the same as what's used to release the chains on each of the vehicles?

"A  Yes.

"Q  Is there a separate one for each of the vehicles?

"A  Yes. There's a—well, there's four chains for each vehicle.

"Q  Okay, is there a bar for each chain, for each vehicle?

"A  No, you only carry one bar.

"Q  Okay, is there a ratchet?

"A  Ratchet for each corner of each vehicle.

"Q  Okay, so you take this bar around and place it in each ratchet for each of the chains for each vehicle?

"A  Yes.

.   .   .   .   .   .

"Q  Okay. Now, so in taking off the first three vehicles, which were on top, you had to use this winch bar for at least twenty times, is that correct—no, I'm sorry, at least—

"A  Twelve times.

"Q  At least twelve times?

"A  Yes.

"Q  And in doing this, did you do this by yourself?

"A  Yes.

"Q  Did Mr. Schan assist you in any way when you removed the first three vehicles so far as the winch bar and the ratchets?

"A  No.

"Q  Concerning these first three vehicles, in which way did Mr. Schan assist you?

"A  Inflated, I think, two tires, I think. It could have been more.

"Q  And he was the man that had been sent out by the Boeing—

"A  Yes.

"Q  Office there?

"A  Yes.

"Q  Did he ever state to you what his occupation was?

"A  (No response from the witness.)

"Q  What was his position with the company?

"A  I think he was the mechanic for the motor pool and Boeing Aircraft Corporation. In fact, I think he—well, Boeing had a contract updating the missiles on each one of these Air Force bases. They transported the vehicles from one base to another one—from South Dakota, North Dakota Air Force Bases, Montana, such as that, and we

transported part of the vehicles. We—I should say Howard Sober, Incorporated and the drivers. And this is what I was doing.

"Q  So you had transported other vehicles from missile base to missile base?

"A  Yes. Tires and trucks both.

"Q  Now, as you started unloading the, what you call, vehicle number four, which I—is that correct, this would be the rear vehicle on the under berth of the rig?

"A  Yes, bottom.

"Q  What happened when you started unloading that one?

"A  Well, I got three chains off, at least two, and I was trying to get the one off on the very bottom rear right side of the trailer, which would be the left front corner of the vehicle, and it was too tight. In fact, I had been trying there for maybe two or three minutes trying to get it loose. And at this time I can't remember whether I asked him for assistance or whether he volunteered. It's been some time ago. Seven or eight years ago.

"Q  Okay, this winch bar that you're using at this time, was it the same winch bar you had used for all the others?

"A  Yes.

"Q  And this was the standard winch bar?

"A  Yes.

"Q  It didn't have an extension on it or anything?

"A  No.

"Q  Okay, what happened next then?

"A  Well, he stuck his hand through the right corner of the trailer to lift it off and I used both hands on the winch bar to pull the—turn the winch; and he released the dog and I couldn't hold the winch bar and it flew back out of my hands and hit him on the back of the hand and pinned him between the bottom part of the trailer—well, it didn't pin him. He jerked it out. As soon as the winch bar hit him he jerked his hands out of the road, otherwise it would have pinned him between the trailer and the winch bar. I walked part of the way towards the garage with him and I could see blood squirting, dripping and blood all over."

In April of 1971 Mr. Schan instituted an action against Sober, Inc. in the Ward County District Court for damages arising out of the accident.

After Mr. Schan had presented all of his evidence, the attorney for Sober, Inc. made a motion for an order dismissing Mr. Schan's complaint, and, after both sides had rested, made a motion for a directed verdict. Both motions were denied.

The jury returned a verdict in favor of Mr. Schan for $94,000. As special findings of fact, the jury determined that:

1. Mr. Schan was not a volunteer;

2. Mr. Schan was a gratuitous employee; and

3. Mr. Schan's neck problems were caused by the injury he sustained on March 9, 1965.

Following the jury verdict, Sober, Inc. made a motion for judgment notwithstanding the verdict or in the alternative for a new trial. We are now concerned with an appeal by Sober, Inc. from the order denying such motion.

We will first consider the appeal of Sober, Inc. from that part of the order denying its motion for judgment notwithstanding the verdict. In reviewing the trial court's denial of a motion for judgment notwithstanding the verdict, we are

guided by the following well-established rules:

"On an appeal from an order denying a motion for judgment notwithstanding the verdict, the only grounds which will be considered are those which were assigned on the motion for a directed verdict." Schollmeyer v. Saxowsky, 211 N. W.2d 377, 381, Syll. ¶ 10 (N.D.1973).

"When a motion for judgment notwithstanding the verdict has been denied by the trial court, the evidence must be considered in a light most favorable to the party in whose favor the verdict was rendered and the trial court's order should not be overruled when there is an issue for the jury to determine." Linington v. McLean County, 161 N.W. 2d 487, Syll. ¶ 1 (N.D.1968).

"Before a motion for judgment notwithstanding the verdict can be granted, it must be conclusively established that the moving party is entitled to judgment as a matter of law." Bartholomay v. St. Thomas Lumber Company, 148 N.W.2d 278, 281, Syll. ¶ 3 (N.D.1967).

■ We have carefully examined the record in the instant case and we conclude that the evidence presented, considered in the light most favorable to Mr. Schan, was sufficient to present an issue for the jury, and that Sober, Inc. was not entitled to judgment as a matter of law. The motion for judgment notwithstanding the verdict was therefore properly denied.

Having determined that Sober, Inc.'s motion for judgment notwithstanding the verdict was properly denied, we will now consider whether the trial court erred in denying Sober, Inc.'s motion for a new trial.

Sober, Inc. has raised four issues for our consideration on appeal. The first issue: "Did the plaintiff sustain the burden of proof in establishing negligence and liability on the part of the defendant?"; and the second issue: "Is the plaintiff preclud-ed from recovery from the defendant by virtue of § 34–02–02 of the North Dakota Century Code?" will be considered together. Sober, Inc. contends that Mr. Schan is precluded from recovering from it by virtue of § 34–02–02, N.D.C.C., which section provides:

"*Except as otherwise provided by law,* an employer is not bound to indemnify his employee for losses suffered by the latter in consequence of the ordinary risks of the business in which he is employed, nor in consequence of the negligence of another person employed by the same employer in the same general business, unless the employer has neglected to use ordinary care in the selection of the culpable employee." [Emphasis added.]

In response, Mr. Schan contends that the instant case is controlled by § 34–02–03, N.D.C.C., which section provides:

"An employer, *in all cases,* shall indemnify his employee for losses caused by the former's want of ordinary care." [Emphasis added.]

Sections 34–02–02 and 34–02–03, N.D.C. C., were enacted originally as §§ 1130 and 1131, respectively, of the Civil Code of 1877, and they provided:

"§ 1130. *Co-Employes.*] An employer is not bound to indemnify his employe for losses suffered by the latter in consequence of the ordinary risks of the business in which he is employed, nor in consequence of the negligence of another person employed by the same employer in the same general business, unless he has neglected to use ordinary care in the selection of the culpable employee.

"§ 1131. *Employer's Negligence.*] An employer must in all cases indemnify his employe for losses caused by the former's want of ordinary care."

The Supreme Court of the Territory of Dakota interpreted these statutes in an action by an employee against his employer

for injuries sustained in a work-related accident, in Herbert v. Northern Pacific R. Co., 3 Dak. 38, 13 N.W. 349 (1882), aff'd 116 U.S. 642, 6 S.Ct. 590, 29 L.Ed. 755. *Herbert* involved a situation where the plaintiff was a brakeman in the defendant's railroad yard at Bismarck. In the course of plaintiff's employment, while attempting to operate the defective brakes on two of defendant's railroad cars, plaintiff's leg was crushed between the cars, requiring amputation.

The defendant contended in *Herbert* that the duty to keep the brakes in a safe and suitable condition for use was delegated to a car repairer and that, because it was such car repairer's negligence which caused the injury to the plaintiff, § 1130, Civil Code of 1877, precluded the plaintiff from recovering from him (the defendant).

The Supreme Court of the Territory of Dakota determined in *Herbert* that the employer had a duty to furnish proper and safe machinery, which duty was not delegable to a servant, and that court held in the syllabus, in pertinent part, in *Herbert, supra* 13 N.W. 349:

"An employer is not liable to those in his employ for injuries resulting from the negligence, carelessness, or misconduct of a fellow-servant engaged in the same general business, and performing services for the same general purposes; but to this rule there are well-defined exceptions. One, and perhaps the most important, of these exceptions arises from the obligation of the master, whether a natural person or a corporate body, not to expose the servant, when conducting the master's business, to perils or hazards against which he may be guarded by proper diligence on the part of the master.

"It is implied, in the contract between the parties, that the servant risks the dangers which ordinarily attend or are incident to the business in which he voluntarily engages for compensation, but it is equally implied, in the same contract, that the master shall supply the physical means and agencies for the conduct of his business, and in selecting such means, machinery, and appliances, and in preserving and maintaining them in a suitable condition, he shall not be wanting in proper care. His negligence in that regard renders him liable to an employe who sustains damage in consequence of such neglect. Sections 1130 and 1131 of the Civil Code is an enactment of the common law on that subject, and does not change this rule.

"The master is liable, as for his own neglect, in failing to furnish proper and safe machinery or implements, and in failing to keep them in a safe and suitable condition for such use. These duties belong to the master, and he cannot rid himself of responsibility for not performing them by showing that he delegated the performance to another servant, who neglected to follow his instructions."

Relying on *Herbert,* this court has established the rule that an employer must furnish his employees with reasonably safe machinery, tools, and appliances. See Titus v. Titus, 154 N.W.2d 391, Syll. ¶ 5 (N.D.1967); Lindenberg v. Folson, 138 N.W.2d 573, Syll. ¶ 6 (N.D.1965); Vick v. Fanning, 129 N.W.2d 268 (N.D.1964); Prefontaine v. Great Northern Ry. Co., 51 N.D. 158, 199 N.W. 480 (1924); Meehan v. Great Northern Ry. Co., 13 N.D. 432, 101 N.W. 183, Syll. ¶ 3 (1904); 53 Am.Jur.2d, Master and Servant § 187; 56 C.J.S. Master and Servant § 205.

South Dakota has codified the fellow-servant rule in § 60-2-2 of the South Dakota Compiled Laws, Vol. 16 (1967), which is almost identical to North Dakota's § 34-02-02, N.D.C.C., and which South Dakota statute reads as follows:

"60-2-2. *Losses for which employer not required to indemnify employee.*—An employer, except as otherwise specially provided, is not bound to indemnify his employee for losses suffered by the lat-

ter in consequence of the ordinary risks of the business in which he is employed, nor in consequence of the negligence of another person employed by the same employer in the same general business, unless he has neglected to use ordinary care in the selection of the culpable employee."

The South Dakota Supreme Court recently applied that section in the case of Smith v. Community Co-operative Association of Murdo, South Dakota, and Ted Nies, Jr., individually and as agent of Community Co-operative Association of Murdo, South Dakota, 209 N.W.2d 891 (S.D.1973), which involved a factual situation which is strikingly similar to that in the instant case.

In *Smith, supra,* the plaintiff, who was a customer of the Community Co-operative Association, brought an action against the cooperative and against its general manager, Ted Nies, Jr., for injuries plaintiff received when, at Mr. Nies' request, plaintiff assisted Mr. Nies in attempting to remove a large tractor tire from its inner assembly, which consisted of a rim, wheel, and counterweight. In such action the defendants appealed from a jury verdict for the plaintiff, contending, in part, that if the injury to the plaintiff was caused by the individual defendant, the plaintiff was precluded from recovering against the defendant-cooperative because of the fellow-servant doctrine.

Affirming the verdict for the plaintiff, the South Dakota Supreme Court held in *Smith, supra* at 209 N.W.2d 893–894:

"The applicability of the fellow-servant rule in a case similar to the present was discussed in Solleim v. Norbeck & Nicholson Company, 1914, 34 S.D. 79, 147 N.W. 266. In that case, the plaintiff, an employee of the defendant, was injured by the negligent act of his foreman. The court held that the foreman was not acting as a fellow-servant within the meaning of the rule. In so hold-

ing, Judge McCoy, writing for the court, stated:

'The one who represents the master whether he be termed vice-principal or superior servant, may act in a dual capacity, (1) as vice-principal or superior servant; (2) as a fellow-servant; and whether or not the master will be held to be liable for the negligence act of such servant will depend upon whether the act, which is alleged to constitute the negligence was performed by such person in his capacity as vice-principal or in his capacity as fellow-servant. If the act was done in the performance of a duty resting upon the master, then the master would be liable for the negligent performance of such duty by the vice-principal, but if the act was done in the performance of a duty resting upon a fellow-servant then the master would not be liable.'

"Applying these principles to the present case, it is clear that the plaintiff was not precluded from recovery by the fellow-servant rule. One of the nondelegable duties of the master is to furnish his employees with a reasonably safe place to work. Stoner v. Eggers, 1958, 77 S.D. 395, 92 N.W.2d 528. This includes the duty of establishing proper methods of work and adequate supervision of the work in which his employees are engaged. Restatement, Second, § 492 et seq.; 56 C.J.S. Master and Servant § 186. Here, the evidence was sufficient to establish that the proximate cause of the plaintiff's injuries was the negligence of Nies, as general manager of the defendant co-op, in the performance of these nondelegable duties of the master. As such, Nies was not acting as a fellow-servant within the meaning of the rule."

We adopt the principles relied on in *Herbert* and *Smith,* and we believe that an application of those principles precludes any application of the fellow-servant rule to the instant case.

Mr. Schan is, therefore, not precluded from recovering from Sober, Inc. if there is substantial evidence to show that he was, at the time of the accident, an employee to whom Sober, Inc. owed a duty of ordinary care in furnishing reasonably safe machinery, tools, and appliances, and, if so, that Sober, Inc. breached that duty, thereby causing Mr. Schan's injuries.

While an employer has the duty to exercise ordinary care in furnishing reasonably safe machinery, tools, and appliances to his employees, he generally has no such duty toward a person whom he has not authorized to perform as an employee. In other words: "A volunteer comes under the rule that one who volunteers to act for another cannot recover for personal injuries as a servant of such other [Anderson v. Meide, 129 N.W.2d 275, 282 (N.D. 1964)]".

There is no evidence in the instant case that Sober, Inc. authorized Mr. Schan to perform as an employee. In addition, there is no evidence that Mr. Lewis was authorized by Sober, Inc. to request another person to assist him in his duties.

However, even though Mr. Schan was not acting with the actual knowledge and consent of Sober, Inc., he still may be considered to be a gratuitous employee where he was acting at the request of Mr. Lewis in an emergency. The general rule is stated as follows in 53 Am.Jur.2d, Master and Servant § 177, at page 236:

"While there is authority to the contrary the prevailing view is that an employee who is confronted with an unforeseen situation which constitutes an emergency, which rendered it necessary, in his employer's interest, that the employee have temporary assistance, is to be deemed to have had implied authority to procure necessary help and thus create between the employer and the emergency assistant the relationship of master and servant, which will engage responsibility on the part of the employer

to the assistant for injuries chargeable to the neglect of the employer."

76 A.L.R. 963.

In the instant case the jury returned a special finding of fact to the effect that Mr. Schan was a gratuitous employee, after having been instructed correctly by the trial court with respect to the applicable law. After a perusal of the record we believe that there was sufficient evidence from which the jury could have made that finding. In fact, in its motion for judgment notwithstanding the verdict or in the alternative for a new trial, Sober, Inc. concedes that the evidence did establish that Mr. Schan was a gratuitous employee.

In Jacobs v. Bever, 79 N.D. 168, 55 N.W.2d 512 (1952), this court held as follows, concerning the duty of care owed by an employer to a gratuitous employee, in paragraph 2 of the syllabus:

" 'The statutory provision that "An employer, in all cases, shall indemnify his employee for losses caused by the former's want of ordinary care", Sec. 34–0203, RCND 1943, is applicable in the case of a gratuitous employee as well as an employee for reward, and in determining the employer's liability the same rule applies as in the case of master and servant.' Olson v. Kem Temple, 77 N.D. 365, 43 N.W.2d 385."

Having determined that Sober, Inc. owed a duty to Mr. Schan to exercise ordinary care and furnish him with reasonably safe machinery, tools, and appliances, we will next determine whether Sober, Inc. breached that duty and thereby caused the injuries to Mr. Schan.

Sober, Inc. contends that the evidence presented by Mr. Schan is insufficient to prove any negligence or breach of duty on its part. Mr. Schan, in response, contends that the evidence shows negligence, not only on the part of Mr. Lewis, but also on

the part of Sober, Inc. We agree with Mr. Schan.

■ Mr. Lewis and Mr. Schan were the only persons to testify concerning the accident and the appliances furnished by Sober, Inc. Mr. Schan testified personally and Mr. Lewis' testimony was entered in the record by deposition. We believe that from their testimony the jury could have reasonably inferred: that the vehicle transport which was driven by Mr. Lewis was too small in physical size to carry four-wheel drive pickups safely; that Sober, Inc. knew—either directly or through its agent, Lewis—that such vehicle transport was not reasonably safe to carry four-wheel drive pickups; that, although knowing of the improper transport furnished by his employer, nevertheless Mr. Lewis, the agent of Sober, Inc., proceeded to carry out the orders of Sober, Inc. and load the four-wheel drive pickups; that in order to load the four-wheel drive pickups, Mr. Lewis was required to deflate the tires of such pickups and use the winch system, which normally was used to hold the vehicles in place, to draw the vehicles down so that the rear deck lid could be lowered without damaging the pickups; that in order to reduce the overall height of the vehicles being transported, the chains were secured tighter than normally was done; that such condition required the assistance of a second person for the release of such chains in the process of unloading the transport; and that there was no safety device to prevent injury should the winch slip because of the tighter-than-normal chains.

■ A motion for a new trial is addressed to the sound discretion of the trial court and this court will interfere only when a manifest abuse of that discretion is shown. Munro v. Privratsky, 209 N.W.2d 745, Syll. ¶ 13 (N.D.1973); Kunze v. Stang, 191 N.W.2d 526, Syll. ¶ 9 (N.D. 1971).

After a careful consideration of the evidence presented, we conclude that there was substantial evidence from which the jury could have reasonably determined that Mr. Schan's injuries were proximately caused by the negligence of Sober, Inc. in failing to exercise ordinary care in furnishing reasonably safe machinery, tools, and appliances to its employees and by the negligence of Mr. Lewis in the performance of Sober, Inc.'s duty to provide such reasonably safe machinery, tools, and appliances.

Accordingly, applying the rationale of *Herbert* and *Smith, supra,* we believe that the fellow-servant rule does not preclude Mr. Schan from recovering from Sober, Inc.; that there is substantial evidence to show that Mr. Schan's injuries were caused by the negligence of Sober, Inc.; and that the trial court did not abuse its discretion in denying Sober, Inc.'s motion for a new trial on these grounds.

The third issue raised by Sober, Inc. is whether the trial court erred in refusing to instruct the jury on the fellow-servant doctrine.

In McLain v. Nurnberg, 16 N.D. 144, 112 N.W. 243 (1907), this court held that a requested instruction, not applicable to the evidence, should be refused.

In Schwabel v. First Nat. Bank of Montpelier, 53 N.D. 904, 208 N.W. 236 (1926), in the syllabus, this court held:

"The scope of the instructions must be determined by the pleadings and by the evidence; and, if a charge be given on issues not raised by the evidence, or contrary thereto, the error requires a reversal of the judgment, when such unwarranted instruction is calculated to mislead the jury to the prejudice of the complaining party."

■ Where the evidence is such that reasonable men must draw the same con-

clusion therefrom, the question before the court becomes a question of law for the court. Bartholomay v. St. Thomas Lumber Company, 148 N.W.2d 278, at 289 (N.D. 1967); Killmer v. Duchscherer, 72 N.W.2d 650, 656 (N.D.1955).

In Vontress v. Ready Mixed Concrete Company, 170 Neb. 789, 104 N.W.2d 331 (1960), the employee of a street pavement contractor brought an action against the ready mixed concrete company for injuries he suffered when one of the company's trucks backed over his foot. The company appealed from a jury verdict for the employee, contending that the fellow-servant rule precluded the plaintiff from recovering against it and citing as error the refusal of the trial court to instruct the jury concerning that rule. The Nebraska Supreme Court affirmed the judgment and held that the facts of the case presented a question of law for the court as to the applicability of the fellow-servant rule. The Nebraska Supreme Court said in *Vontress, supra* 104 N.W.2d at 334:

"The factual situation herein presented as to the use by Pane of Ready Mixed truck drivers to pull the strike-off bar, if and when requested to do so, is not in dispute. We said in Mansfield v. Andrew Murphy & Son, 139 Neb. 793, 298 N.W. 749, 750: 'In such case, whether the right of control, or want of it, existed, is ordinarily a question of fact for the jury; but where the pertinent facts pertaining to the contract and relationship of the persons involved are not in dispute, and but one reasonable inference can be drawn therefrom, it is a question of law for the court.'"

We adopt the rationale of *Vontress* in the instant case because the pertinent facts concerning the applicability of the fellow-servant rule are not in dispute. We believe that the trial court could have concluded that reasonable men could draw

but one conclusion from the evidence presented and that the court was therefore correct in deciding, as a matter of law, not to give the requested instruction. We have considered, in their entirety, the instructions given by the trial court, and we believe that they fairly informed the jury as to the applicable principles of law. Willert v. Nielsen, 146 N.W.2d 26 (N.D.1966).

The final issue raised by Sober, Inc. is whether the damages awarded by the jury are excessive.

In Klein v. Harper, 186 N.W.2d 426 (N.D.1971), the defendant in a personal injury action appealed from a judgment for the plaintiff. He contended, in part, that the damages awarded by the jury were excessive. This court affirmed the judgment for the plaintiff and held as follows regarding the relevant rule with respect to our review of the denial of a motion for new trial on the ground that the damages are excessive, in *Klein, supra* 186 N.W.2d at 428, in paragraph 9 of the syllabus:

"A motion for a new trial on the ground that damages are excessive and appear to have been given under the influence of passion and prejudice is addressed to the sound judicial discretion of the trial court and the appellate court will not reverse the trial court's order on that ground unless an abuse of discretion is clearly shown."

When the winch bar "flew back out of my hands", as testified by Mr. Lewis, the winch bar crushed the right index finger of Mr. Schan, causing a severe laceration and fracture of that finger. The record discloses that Mr. Schan suffered severe pain as the result of the accident, not only in his hand but also in his right shoulder area and neck. He was required to undergo extensive physical therapy in an attempt to save his right index finger,

and when this failed, the finger was amputated. Mr. Schan was also required to undergo physical therapy and traction treatments because of the pain in his hand and right shoulder area and neck, and when these treatments failed to relieve the pain, surgery was performed on his neck. The record further discloses that, at the time of trial, because of his injuries, it would take Mr. Schan twice as long to perform any mechanical work on motor vehicles as it formerly had taken. Medical testimony showed that he is permanently disabled to the extent of 33⅓% of the whole man. This percentage of disability amounts to a diminution in his earning capacity of approximately $3,640 per year over the period of his life expectancy, which was shown to be 27 years. The medical, hospital, and other costs incurred in the treatment of the injuries he sustained were approximately $2,700. In addition, Mr. Schan was required to spend considerable time in exercising and in receiving therapy treatments for his injuries; and it will be necessary for him to continue such therapy.

In Holten v. Amsden, 161 N.W.2d 478, 485 (N.D.1968), we said:

"Before this court will find a verdict excessive, it must find that the amount awarded is so unreasonable and extreme as to indicate passion and prejudice on the part of the jury."

After a careful review of the evidence in the instant case, we do not believe that the verdict was so large as to indicate passion and prejudice on the part of the jury, or that the lower court abused its discretion in denying Sober, Inc.'s motion for a new trial on this ground.

Accordingly, the order appealed from is affirmed.

ERICKSTAD, C. J., and TEIGEN, KNUDSON and VOGEL, JJ., concur.